IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OXFORD HEALTH PLANS, INC., | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| v. | § § | 3:08-CV-2089-M |
| SAGEBRUSH SOLUTIONS, L.L.C., | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion to Confirm Arbitration Award [Docket Entry #2]. Having considered the Motion, the Court finds that it should be **GRANTED,** and hereby enters final judgment for the Plaintiff.

## PROCEDURAL HISTORY

Sagebrush Solutions, L.L.C. ("Sagebrush") commenced a suit for breach of contract against Oxford Health Plans ("Oxford") on November 18, 2005.  On May 16, 2006, this Court abated the suit until alternative dispute resolution procedures were conducted.  Then, on June 14, 2007, this Court dismissed the suit without prejudice to the parties arguing the same issues in a case initiated by Oxford before the American Arbitration Association.  Following the arbitration, Sagebrush filed with this Court a Motion to Vacate the Arbitration Award, but then moved to dismiss its claims.  On November 17, 2008, this Court granted the Motion to Dismiss.  Oxford then filed a Motion to Confirm the Arbitration Award, which constitutes the instant action.

## BACKGROUND

Oxford is a health insurance provider that does business in Texas.  Sagebrush is a Texas limited liability company in the business of providing electronic auditing of medical claims for

insurance companies, and identifying and recovering overpaid claims. In June 2002, Oxford and Sagebrush entered into a Letter of Understanding (the "Agreement") under which Sagebrush, for a set fee, agreed to provide Oxford with overpayment identification and recovery services for previously paid medical claims submitted by health care providers. The overpayments identified and collected by Sagebrush were to be maintained by Sagebrush in a lockbox account at Texas Bank, and Sagebrush would then send a check in the amount of the overpayments (minus its fee) to Oxford. However, a dispute arose between the parties, and on November 18, 2005, Sagebrush filed suit against Oxford.

Under the Agreement, the parties voluntarily agreed to mediate controversies, but if mediation proved unsuccessful, the parties agreed to submit the dispute to an arbitration panel pursuant to the Federal Arbitration Act ("FAA"). On May 16, 2006, this Court granted the parties' Joint Motion to Abate, so the parties could complete the alternative dispute resolution process provided for in the Agreement. Mediation was unsuccessful, and an arbitration hearing was scheduled for September 3-5, 2008. Prior to the arbitration, Sagebrush requested a one day continuance because one of its witnesses, Sally Reaves, would not return from vacation until September 3, 2008. The panel of arbitrators denied the continuance and held the proceedings as scheduled. Ms. Reaves was in attendance only on September 4 and 5, 2008. The panel's final determination was issued in October 2008, and although the award validated portions of each parties' claims, a net award of $345,638.94 was rendered for Oxford.

On November 21, 2008, Oxford moved this Court to confirm the arbitration award. However, Sagebrush contends the arbitration award should be vacated in its entirety, for three reasons: 1) the arbitration panel improperly refused to postpone the proceedings, which resulted in prejudice to Sagebrush; 2) the panel exceeded its power by awarding a remedy other than "the

re-performance of the Services and/or the right to terminate the Agreement;" and 3) the panel failed to follow the essence of the contract when damages were not awarded to Sagebrush for its work-in-progress prior to the termination of the contract.  Having carefully considered the relevant facts and applicable law, the Court finds Sagebrush's claims are without merit, and confirms the arbitration award in its entirety.

## LEGAL STANDARD

When the parties to an agreement have agreed that a judgment of the court shall be entered upon an arbitration award, either party may apply to the court for an order confirming the award, provided the parties have properly specified the court and made the request within a year of the award.[1]  Upon receiving such a request, the court *must* grant the order unless the award is vacated, modified, or corrected, as prescribed by statute.[2]

Section 10 of the FAA contains four grounds for vacating an award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[3]

Section 11 of the FAA sets forth three grounds for modifying or correcting an award:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person,

---

[1] *See* 9 U.S.C. §9 (1999).
[2] 9 U.S.C. §§10, 11 (1999).
[3] 9 U.S.C. §10.

>thing, or property referred to in the award.
>(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.[4]

Sections 10 and 11 remedy egregious departures from the terms of the parties' agreed-upon arbitration, and provide the exclusive grounds for expedited vacatur and modification under the FAA.[5] As a result, judicial review of an arbitration award is "exceedingly deferential."[6] To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said he was deprived of a fair hearing.[7] Even a mistake by the arbitrator to correctly apply the law is not alone sufficient to set aside an arbitrator's award.[8] Additionally, a party moving to vacate an award for failure to postpone under §10(a)(3) has the burden of showing it suffered prejudice from the arbitration panel's refusal to delay proceedings, and that the panel's refusal to postpone the hearing had no reasonable basis.[9]

Arbitration is a matter of contract, and the powers of an arbitrator are "dependent on the provisions under which the arbitrators were appointed."[10] Where arbitrators act contrary to express contractual provisions, they have exceeded their powers, but where limitations on the arbitrator's authority are uncertain or ambiguous they will be construed narrowly.[11] When

---

[4] 9 U.S.C. §11.
[5] *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396, 1403-04 (2008); *Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 258 (5th Cir. 2007).
[6] *See Am. Laser Vision,* 487 F.3d at 258 ("Judicial review of an arbitration award is 'exceedingly deferential.' Vacatur is available 'only on very narrow grounds,' and federal courts must 'defer to the arbitrator's decision when possible.' An award must be upheld as long as it 'is rationally inferable from the letter or purpose of the underlying agreement.'" (citations omitted)).
[7] *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 400 (5th Cir. 2006).
[8] *Am. Laser Vision*, 487 F.3d at 258.
[9] *See Laws*, 452 F.3d at 400.
[10] *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007).
[11] *Id.*

determining whether arbitrators have exceeded their powers, a court must resolve all doubts in favor of the arbitration decision.[12]

## ANALYSIS

*A.   Failure to postpone*

Sagebrush first argues the arbitration award should be vacated because the one day continuance it requested was denied, despite a showing of sufficient cause for the postponement. Sagebrush claims the continuance was necessary to allow its principal witness, Sally Reaves, to attend the entire arbitration hearing. In opposing confirmation of the award, Sagebrush argues that it was "not able to start out on a level playing field at the arbitration hearing on September 3, 2008," because without Reaves' attendance "Sagebrush was not able to attack the evidence or testimony presented by Oxford during the September 3, 2008, hearing." Reaves was in charge of the account with Oxford, and Sagebrush contends she was essential to rebut witness testimony and other evidence offered by Oxford. According to Sagebrush, the arbitrators' failure to allow a one day postponement was arbitrary, and prejudicial to Sagebrush's ability to present its case.

However, the Court finds the arbitration panel's decision to deny the continuance to be reasonable. Sagebrush bears the burden of showing that the panel's refusal to postpone the hearing lacked any reasonable basis, and that it suffered actual prejudice from the panel's refusal to delay the proceedings.[13] But the record shows that on September 3, 2008, the arbitration hearing was well attended by representatives of Sagebrush. The company's CEO, Faith Glover, attended, as did two attorneys. Reaves also attended the final two days of the hearing and was given an opportunity to testify. Absent an explanation as to how Sagebrush would have presented its case differently, or how a continuance might have altered the outcome of the

---

[12] *Id.*
[13] *Laws*, 452 F.3d at 400.

arbitration, the Court is unable to find that the denial of the continuance resulted in Sagebrush being deprived of a fair hearing.

Furthermore, the Court finds the record supports at least two reasonable bases for denying the continuance.  First, the arbitration panel could reasonably have denied the continuance for efficiency purposes, having already granted a continuance at Sagebrush's request in March of 2008.  Additionally, the panel could reasonably have concluded that Sagebrush failed to present good cause for the delay.  In its Motion for Continuance, Sagebrush claimed that, "[b]efore this case was set for hearing to commence on September 3, 2008, Sally Reaves, chief operating officer and Sagebrush's principal witness was scheduled to return from vacation on that date."  However, the email confirmation Sagebrush offered to prove Reaves' vacation was scheduled before the arbitration hearing date was set does not support its argument.  According to the American Airlines confirmation email submitted by Sagebrush, Reaves' itinerary was prepared on April 21, 2008.  The arbitration dates were proposed by *both* parties on June 4, 2008.  Therefore, Sagebrush actually proposed the conflicted date *after* Reaves had purchased her vacation ticket, and thus brought the conflict upon itself.  Accordingly, it was reasonable for the arbitration panel to refuse to grant the continuance, especially in light of Reaves' ability to attend the final two days of the hearing and provide testimony therein.

  *B.*  *The arbitrators exceeded their powers*

Sagebrush next argues that the arbitrators exceeded their powers under the Agreement by granting net damages to Oxford.  Sagebrush contends the proper remedy under the Agreement was simply re-performance of the services provided and/or the right to terminate the Agreement, and that only in the case of negligence, unlawful or willful misconduct could Oxford recover actual damages.  Sagebrush claims the arbitrators exceeded their authority by awarding

$401,841.00 in damages for the return of lockbox overpayments to Oxford. According to Sagebrush, under the Agreement the only amount in damages the arbitrators could have properly awarded was the fees Oxford actually paid to Sagebrush. The Court finds no merit in these arguments.

Sagebrush's argument as to the proper type of remedy relies in part on Article III, Section A of the Agreement, which provides: "For any breach of the above *warranty...* [Oxford's] exclusive remedy, and Sagebrush's entire liability, shall be the re-performance of the Services and/or the right to terminate the Agreement…except as to damages incurred by Oxford resulting from Sagebrush's negligent, unlawful or willful misconduct."[14] While this provision does limit Sagebrush's liability to Oxford, it does so in the context of a breach of warranty claim. As Sagebrush admits, the claims before the arbitration panel were not for breach of warranty, but instead were for breach of contract and unjust enrichment. As a result, the remedies available to the arbitration panel were not expressly limited by this provision. Having carefully reviewed the contractual language, the Court finds the arbitration panel acted within its discretion when it granted damages to Oxford.[15] At best, the contractual language regarding liability for breach of the Agreement is ambiguous, and the Court will not usurp the arbitrators' decision on this basis.

Sagebrush's claim that the *amount* awarded to Oxford exceeded the enumerated power of the arbitrators is also without merit. Sagebrush relies on Article III, Section B of the Agreement,

---

[14] Sagebrush Response, App. P. 8 (emphasis added). The Terms and Conditions provide that "SAGEBRUSH will exercise due professional care and competence in the performance of the Services. SAGEBRUSH will perform its duties under the Agreement in a good and workmanlike manner consistent with applicable legal and regulatory standards and practices."

[15] The Court notes that even if Sagebrush's construction and application of the Agreement were correct, and even though the arbitrators did award "damages" to Oxford, the award would still be confirmed. The Agreement between Sagebrush and Oxford provided that the amount of recovered overpayments would be forwarded to Oxford via a check from Sagebrush, less its fees. Thus, if the arbitrators had ordered "re-performance" of the Agreement, this remedy would have required payment of the recovered overpayments to Oxford, less Sagebrush's fees, which, in essence, is identical to the amount of "damages" actually awarded by the arbitrators in this case to Oxford. Because there is no fundamental difference between "re-performance" and "damages," the Court will not overturn the award on this ground.

pertaining to "Warranty and Liability." The pertinent language of this section states, "the total liability to [Oxford] . . . regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranties, failure of essential purpose or otherwise, under this Agreement or with respect to the Services shall be limited to the fees paid by [Oxford] to Sagebrush under this Agreement except as to damages incurred by Oxford resulting from Sagebrush's negligent, unlawful or willful misconduct."[16] Even though the "damages" awarded were for the "return of lockbox overpayments" and "commissions," rather than a refund of fees paid, the net award to Oxford does not exceed the amount of fees paid by Oxford to Sagebrush under the Agreement, which from August 2005 through May 2006 totaled more than $630,000.00.[17] Consequently, the net award of $345,638.94 to Oxford complies with this somewhat ambiguous "limiting provision," and the Court will not disturb the arbitration award on this basis.[18]

### C. *The arbitrators failed to follow the essence of the contract*

Sagebrush's final argument is that the arbitrators deviated from what was "rationally inferable" from the "essence" or "letter and purpose" of the contract. Specifically, Sagebrush complains the award failed to include fees owed to Sagebrush for "work-in-progress" conducted prior to the termination of the contract. Article VI of the Agreement states that "[Oxford] shall pay Sagebrush for actual recoveries resulting from work-in-progress, (pro-rated to reflect actual

---

[16] Sagebrush Response, App. P. 9.

[17] *See* Oxford Reply, App. P. 5.

[18] The Court once again notes the importance of the nature of the "damages" recovered in this case. The arbitrators awarded an amount of money originating from the lockbox account maintained by Sagebrush, for which the Agreement provided Sagebrush would send a check less its fees to Oxford on a monthly basis. The arbitrators had the power to determine who was rightfully entitled to the funds, as Sagebrush contended at arbitration that it was owed fees that exceeded the amount of overpayments in the account without disputing that such funds were subject to the Agreement and were to be forwarded to Oxford. It was entirely within the arbitrators' discretion to determine the amount of fees owed to Sagebrush, and to award the lockbox funds to Oxford as provided under the Agreement. The arbitrators did not award any other type of "damages" beyond the amounts of overpayments held by Sagebrush as a result of disputed fees, and the Court finds that the award was entirely within the "essence" of the Agreement.

work performed by Sagebrush) Services and expenses incurred prior to the effective date of termination."[19] The arbitrators granted Sagebrush unpaid fees for overpayments that Sagebrush identified and that Oxford collected, in the amount of $115,216.20. Sagebrush has not shown that this amount does not include an award for work-in-progress. In fact, Sagebrush has not even alleged a specific amount due for such work-in-progress. As a result, the Court must defer to the judgment of the arbitrators, and affirm the award in its entirety.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Oxford's Motion to Confirm the Arbitration Award and **ORDERS** the following:

1. On the Plaintiff's claim for return of lockbox overpayments, the Court confirms the award of damages to the Plaintiff in the amount of $401,841.00, with no interest;

2. On the Plaintiff's claim for recovery of commissions taken by the Defendant for recoveries that did not actually occur, the Court confirms the award of damages to the Plaintiff in the amount of $159,494.39, with no interest;

3. On the Defendant's claim for unpaid fees for overpayments that the Defendant identified and that the Plaintiff collected, the Court confirms the award of damages to the Defendant in the amount of $115,216.20, with no interest;

4. On the Defendant's claim for unpaid fees on overpayments collected in the lockbox, the Court confirms the award of damages to the Defendant in the amount of $100,460.25, with no interest;

5. The net result of the awards set forth in paragraphs 1-4 above is that the Defendant shall pay to the Plaintiff damages in the amount of $345,638.94, with no interest;

---

[19] Sagebrush Response, App. P. 10.

6.     Except as otherwise stated above, all other claims and/or counter-claims of the parties for any damages or other relief are denied;

7.     The administrative fees of the American Arbitration Association totaling $19,750.00 and compensation and expenses of the arbitrators totaling $ 67,976.22 shall be borne as incurred.

SO ORDERED this 1st day of April, 2009.

*[signature]*

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
**NORTHERN DISTRICT OF TEXAS**